UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL EARL H. SMITH,

NO.  C12-5376-TSZ-JPD

Plaintiff,

v.

REPORT AND
RECOMMENDATION

MICHAEL J. ASTRUE, Commissioner of
Social Security,

Defendant.

Plaintiff Daniel Earl H. Smith appeals the final decision of the Commissioner of the
Social Security Administration ("Commissioner") which denied his applications for Disability
Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,
after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below,
the Court recommends that the Commissioner's decision be AFFIRMED.

I.      FACTS AND PROCEDURAL HISTORY

At the time of the first administrative hearing, plaintiff was a thirty-eight year old man
with a high school education, although he attended special education courses.  Administrative
Record ("AR") at 26, 207.  His past work experience includes employment as a warehouse
laborer, construction laborer, and cement company laborer.  AR at 27, 203.  Plaintiff was last
gainfully employed as a warehouse laborer in 2005.  AR at 27.

REPORT AND RECOMMENDATION - 1

On October 30, 2006, plaintiff protectively filed an application for DIB, alleging an onset date of October 15, 2005.  AR at 169-79, 201.  Plaintiff asserts that he is disabled due to Scheuermann's disease and depression.  AR at 201.[1]  Specifically, he asserted that he is limited by "back spasms . . . if I try to work.  I am in pain and can't take medication if I work because I am on Percocet.  I am hard to work with due to my depression.  I can't sleep at night and can't get up in the morning."  AR at 202.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 80-85.  Plaintiff requested a hearing, which took place on April 14, 2009.  AR at 21-39.  On May 13, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 73.

On May 24, 2010, the Appeals Council granted plaintiff's request for review and remanded the decision to the ALJ with instructions to further develop the vocational evidence at step five of the sequential evaluation process.  Specifically, the Appeals Council found that the ALJ erred because "evidence was not obtained from a vocational expert witness regarding the impact of the claimant's non-exertional limitations on the ability to perform jobs remaining in the national economy."  AR at 74-76.

On January 27, 2011, the ALJ held a second hearing, and obtained testimony from a VE.  AR at 40-48.  At the time of that hearing, plaintiff was forty years old.  AR at 43.  On February 10, 2011, the ALJ issued a decision finding plaintiff not disabled because plaintiff could perform a specific job existing in significant numbers in the national economy, such as working as a small parts assembler, mail clerk, and car washer.  AR at 7-15.

---

[1] Scheuermann's disease is a condition of the vertebrae associated with pain and kyphosis of the spine, which is abnormal curvature of the spine.  *See* Webster's Medical Dictionary (1986).

REPORT AND RECOMMENDATION - 2

1    On March 1, 2012, the Appeals Council denied plaintiff's request for review, making

2    the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C.

3    § 405(g).  AR at 1-6.  On April 27, 2012, plaintiff timely filed the present action challenging

4    the Commissioner's decision.  Dkt. 1.

5                              II.      JURISDICTION

6    Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

7    405(g) and 1383(c)(3).

8                          III.      STANDARD OF REVIEW

9    Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

10   social security benefits when the ALJ's findings are based on legal error or not supported by

11   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

12   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

13   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

14   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

15   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

16   medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

17   53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

18   whole, it may neither reweigh the evidence nor substitute its judgment for that of the

19   Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

20   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

21   must be upheld.  *Id.*

22   The Court may direct an award of benefits where "the record has been fully developed

23   and further administrative proceedings would serve no useful purpose."  *McCartey v.*

24

*Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

(9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
> claimant's evidence; (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

erroneously rejected evidence may be credited when all three elements are met).

### IV.   EVALUATING DISABILITY

As the claimant, Mr. Smith bears the burden of proving that he is disabled within the

meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are

of such severity that he is unable to do his previous work, and cannot, considering his age,

education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for

determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

§§ 404.1520(b), 416.920(b).[2]  If he is, disability benefits are denied.  If he is not, the

Commissioner proceeds to step two.  At step two, the claimant must establish that he has one

or more medically severe impairments, or combination of impairments, that limit his physical

or mental ability to do basic work activities.  If the claimant does not have such impairments,

he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

impairment, the Commissioner moves to step three to determine whether the impairment meets

or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed

in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

then the burden shifts to the Commissioner at step five to show that the claimant can perform

other work that exists in significant numbers in the national economy, taking into consideration

the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

V.    DECISION BELOW

On February 10, 2011, the ALJ issued a decision finding the following:

1.    The doctrine of the law of the case applies to the first three steps of the sequential evaluation and are therefore incorporated into this decision.

2.    As found previously and affirmed by the Appeals Council, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work, including the abilities to lift and or carry 20 pounds occasionally, and 10 pounds frequently; stand and/or walk six hours in an eight hour workday; and can perform all postural movement, including crouching, crawling, bending, stooping, and kneeling occasionally.  In addition, the claimant is capable of perform (sic) simple instructions not requiring academic skills, but cannot perform complex instructions or tasks.  He can interact with co-workers and accept supervision, but should not work with the public. He can tolerate simple work changes and can manage hazards.  [The additional postural or environmental limitations indicated do not significantly erode the universe of light work (Social Security Rulings 83-10; 83-14; 85-15).  *Roquemore v. Comm'r of SSA*, 2010 U.S. App. LEXIS 4971 (9th Cir. [2010]) (occasional climb, balance, stoop, kneel, crouch, and crawl, climb poles, ropes and scaffolds have very little or no effect on the unskilled occupational base for light or sedentary work).  *Cf., also, Baeir v. Astrue*, 319 Fed. Appx. 521 (9th Cir. 2010).]

3.    Through the date last insured, the claimant was unable to perform any past relevant work.

4.    The claimant was born on XXXXX, 1971 and was 37 years old, which is defined as a younger individual age 18-49, on the date last insured.[3]

5.    The claimant has at least a high school education and is able to communicate in English.

6.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

7.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

8.     The claimant was not under a disability, as defined in the Social Security Act, from October 15, 2005, the alleged onset date, through December 31, 2008, the date last insured.

AR at 13-15 (footnote bracketed in text).

## VI.     ISSUES ON APPEAL

The sole issue on appeal is:

1.     Did the ALJ err by rejecting the opinions of plaintiff's treating psychologist, Edwin L. Hill, Ph.D.?

Dkt. 11 at 1; Dkt. 15 at 1.

## VII.     DISCUSSION

A.     The ALJ Did Not Err by Discounting the Opinion of Edwin L. Hill, Ph.D.

1.     *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his/her conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

(9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2.     *The Parties' Contentions Regarding the ALJ's Evaluation of Dr. Hill's Opinions and the Conflicting Medical Evidence*

Plaintiff contends that the ALJ erred by affording little weight to the opinion of plaintiff's treating psychologist, Edwin L. Hill, Ph.D. Dkt. 11 at 4-6.  Specifically, plaintiff contends that the ALJ erred by failing to adopt Dr. Hill's opinion, which was included in most of his treatment notes, that "plaintiff has personality characteristics associated with impatience and intolerance that aggravate temper and interfere with problems solving when interpersonal

conflicts arise." *Id.* (citing AR at 579, 582, 591, 595, 597).  Plaintiff asserts that Dr. Hill based his opinions regarding plaintiff's difficulties handling interpersonal conflicts on plaintiff's "emotional volatility such as losing his temper after an argument with his wife and leaving home with a gun; ranting and raving during an argument with his wife for an extended period of time; two episodes of losing his temper related to conflict with his vocational counselor, frequent problems with his family . . . and difficulty with language abilities on objective tests." *Id.* at 4 (citing AR at 588, 591, 595, 598, 601).  Plaintiff contends that although the ALJ did not explicitly reject Dr. Hill's opinion about plaintiff's difficulties with interpersonal conflicts and/or relationships, "the ALJ failed to include any interpersonal limitations in the RFC assessment" and this error was harmful because the VE testified that "a restriction [regarding] working with co-workers and supervisors would result in the plaintiff not being able to perform any of the jobs identified by the ALJ[.]"  *Id.* (citing AR at 14, 43-48).

The Commissioner responds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Hill's opinions about plaintiff's functioning in favor of contradictory opinions of psychiatrists Richard Schneider, M.D., Shoshonna Press, M.D., and John Kookier, M.D.  Dkt. 15 at 5-6.  Specifically, the Commissioner points to the ALJ's conclusion that Dr. "Schneider's opinion was well supported" by the evidence of record, and therefore the ALJ properly "summariz[ed] the conflicting medical evidence in detail and interpret[ed] it" by adopting Dr. Schneider's opinion that plaintiff's "issues with social interaction were lifelong concerns that had not, and did not, pose an actual barrier to working" despite Dr. Hill's differing opinion.  *Id.* at 9-10 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the Commissioner contends that the ALJ properly found that his negative credibility assessment, which plaintiff does not challenge, "pulls the rug out from under most

of Dr. Hill's assumptions." *Id.* (citing AR at 68).  The Commissioner asserts that "rather than challenge the ALJ's credibility finding, Plaintiff argues that Dr. Hill's reliance on Plaintiff's incredible allegations were offset by Dr. Hill's own observations of Plaintiff's impaired social functioning, which he believes were sufficient to drain the ALJ's finding of substantial evidence.  However, most of the incidents Plaintiff points out involved Plaintiff's reports of domestic difficulties, not actual observations made by Dr. Hill." *Id.* at 11 (citing AR at 588, 591, 595, 598, 601).  Similarly, the Commissioner argues that the ALJ properly found Dr. Hill's opinions unreliable because they were internally inconsistent.  *Id.* at 11 (citing *Bayliss*, 427 F.3d at 1216).  Thus, the Commissioner asserts that the ALJ properly weighed the conflicting medical opinions in this case.  *See id.* at 12.

Plaintiff replies that "the ALJ's reasons for rejecting Dr. Hill's other opinions did not apply to Dr. Hill's interpersonal conflict opinions."  Dkt. 16 at 2 n.2.  Plaintiff asserts that he "conceded in his opening brief that the ALJ gave reasons for rejecting some of Dr. Hill's opinions . . . That does not excuse the ALJ's failure to offer specific and legitimate reasons for rejecting Dr. Hill's specific opinions concerning limitations in interpersonal conflicts."  *Id.* Plaintiff asserts that this opinion is "significant relevant evidence that impacts directly on the RFC," and therefore the ALJ cannot ignore it.  *Id.* (citing *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)).  Finally, plaintiff contends that "plaintiff's credibility is irrelevant to Dr. Hill's interpersonal conflicts opinions," and the ALJ himself opined that plaintiff has "moderate difficulties" in social functioning because "his anger issues may cause certain limitations."  *Id.* (citing AR at 60).

3.      *Dr. Hill's Treatment of Plaintiff and Opinions Regarding Plaintiff's Ability to Resolve Interpersonal Conflicts*

Plaintiff began seeing Dr. Hill for counseling around August 2005.  AR at 443.  In September 2005, Dr. Hill drafted a progress report for plaintiff's claim manager at the Washington State Department of Labor and Industries ("L&I"), in which he diagnosed plaintiff with pain disorder, major depressive disorder with suicidal ideation, sleep disorder related to chronic pain and depression, intermittent explosive disorder, reading disorder, mathematics disorder, generalized anxiety disorder, Type A personality traits, and a rule out diagnosis of attention deficit hyperactivity disorder.  AR at 495-97.  Dr. Hill noted that plaintiff reported that his prescribed medication has helped him control impulsive displays of anger, loss of temper and suicidal thoughts.  AR at 497.  In addition, he indicated that plaintiff "has had limited progress with respect to learning psychological coping techniques involving cognitive modification and relaxation techniques for self soothing," due to a conflict with L&I over reinstatement of his time loss compensation after he quit a light duty construction job based upon his physician's recommendation.  AR at 497.  Thus, Dr. Hill's opinion was that the primary basis of plaintiff's depression and anger management problems stemmed from his on-the-job injury in February 2002, and "the reality that he will have permanent physical limitations which impair him from returning to a career that he loved."  AR at 492.  Dr. Hill assigned a Global Assessment of Functioning ("GAF") score of 48.[4]  AR at 495.

---

[4] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).  A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment

1    In November 2005, plaintiff was evaluated by Dr. Schneider in relation to his workers'

2    compensation claim stemming from the February 2002 injury.  AR at 300-09.  After reviewing

3    plaintiff's medical records and conducting a clinical interview, Dr. Schneider diagnosed

4    depressive disorder, not otherwise specified, and assessed "aggressive personality traits,"

5    although he did not diagnose a personality disorder.  AR at 306.  Dr. Schneider noted that

6    plaintiff expressed a great deal of anger toward L&I because of his financial troubles.  AR at

7    57, 303.  Dr. Schneider also opined that plaintiff's psychiatric condition was "longstanding"

8    and "virtually a life-long problem," and that plaintiff's "chronic moodiness, irritability, and

9    threatening behaviors" did not pose a barrier to plaintiff's return to work because he had

10   worked despite these issues his entire life.  AR at 67, 307.  Dr. Schneider assessed a GAF score

11   of 61.  AR at 306.

12       In February 2006, Dr. Hill drafted a lengthy letter to L&I disagreeing with Dr.

13   Schneider's opinion and advocating for reinstatement of plaintiff's time loss compensation.

14   AR at 489-94.  In his letter, Dr. Hill assigned plaintiff a GAF score of 50.  AR at 494.

15       In May 2006, Dr. Kookier performed a psychiatric evaluation and "attempted to

16   reconcile the various opposing positions" about plaintiff's mental functioning.  AR at 69, 469-

17   73.  After considering Dr. Hill's and Dr. Schneider's reports, Dr. Kookier conducted a

18   psychiatric interview and concluded that plaintiff "is fixed and stable" and assigned a GAF

19   score of 70-80.  AR at 69, 470-72.

20       In October 2006, Dr. Hill performed a neuropsychological evaluation to evaluate

21   plaintiff for a learning disorder.  AR at 483-88.  Plaintiff's test results were consistent with a

22   diagnosis of ADHD, and a mixed learning disability.  Dr. Hill assigned a GAF score of 51.  AR

23
     in social, occupational, or school functioning," such as the lack of friends and/or the inability
24   to keep a job.  *Id.*

at 487.  From February 2008 through January 2008, Dr. Hill continued to file reports with L&I endorsing plaintiff's disability claim and assigning plaintiff GAF scores in the 50s.  AR at 581-602.

At the conclusion of his treatment of the plaintiff in July 2008, Dr. Hill opined that plaintiff remained at risk "for violent behavior and/or suicide, but seems to be currently stable and demonstrating good capacities for self management of his anger and depression."  AR at 579.  He noted that plaintiff's anxiety and anger management had improved, although he still had some difficulty with depression and insomnia.  AR at 579.  He also opined that plaintiff's "prognosis for return to full time employment appears to be very poor given his physical limitations and his pre-existing problems with learning disabilities which will make prospects for vocational retraining poor."  AR at 580.  Dr. Hill continued to note "[p]ersonality characteristics associated with impatience and intolerance that aggravate temper and interfere with problem solving when interpersonal conflicts arise."  AR at 579.  However, Dr. Hill opined that plaintiff "appears to have reached maximum psychological improvement with respect to self managing his problems with chronic pain, depression, anxiety, explosive temper, stress, and insomnia," and his "psychological problems appear to be fixed and stable."  AR at 69, 580.  He assigned plaintiff a GAF score of 58, and discharged plaintiff from treatment.  AR at 578-80.

### 4.    The ALJ's Evaluation of Dr. Hill's Opinion

The ALJ summarized Dr. Hill's letter to L&I, in which Dr. Hill "stated that he strongly disagreed with Dr. Schneider's findings, believing that Dr. Schneider based his findings on incorrect interpretations of previous psychological reports."  AR at 68.  However, the ALJ noted that Dr. Hill's letter "focused on whether the claimant's mental health conditions pre-existed the injury or not, but the undersigned finds no relevance in this discussion to a

1   determination of disability as of the claimant's alleged onset date.  A pre-existing condition . . .

2   has no effect on Social Security benefits."  AR at 68.  In addition, the ALJ noted that Dr. Hill

3   stated that Dr. Schneider unfairly characterized the claimant's emotional state as primarily

4   focused on a loss of income, but the ALJ did not agree.  AR at 68.  For example, "when

5   questioned about the mental and emotional consequences of his injury, the claimant responded

6   that the State was running his life and his house and family's welfare was threatened because

7   there were insufficient objective findings to pay him.  He also stated his longstanding fight

8   with the State had led him to suicidal and homicidal ideation."  AR at 68.  Based upon these

9   comments, the ALJ concluded that Dr. Schneider could reasonably infer that plaintiff's

10  "condition resulted at least in part by his difficulty with the Department of Labor and

11  Industries[.]"  AR at 68.

12      With respect to Dr. Hill's own treatment notes and diagnoses, the ALJ questioned Dr.

13  Hill's decision not to conduct the MMPI-2 test due to plaintiff's impaired reading skills, as this

14  test may have been a strong indicator of whether plaintiff was malingering regarding his

15  memory problems.  AR at 68.  The ALJ also did "not assign significant weight" to Dr. Hill's

16  opinions regarding plaintiff's chronic back pain and its effect on his ability to perform work on

17  a full-time basis, as this opinion concerned plaintiff's "physical, rather than psychological,

18  limitations.  Moreover, my assessment of claimant's credibility pulls the rug out from under

19  most of Dr. Hill's assumptions, which credit claimant uncritically."  AR at 68.

20      Finally, the ALJ concluded that "Dr. Hill may be correct in his assessment that the

21  claimant's experience with the Department of Labor and Industries 'aggravated his problems

22  with depression, irritability, suicidal ideation, homicidal, ideation, and anger,' but it does not

23  follow that he is disabled, specifically under the Social Security Act."  AR at 69.  The ALJ

24  supported this conclusion by pointing out that Dr. Hill's psychotherapy discharge report in July

REPORT AND RECOMMENDATION - 14

1   2008 were internally inconsistent.  AR at 69.  Specifically, although Dr. Hill asserted that

2   plaintiff's prognosis for returning to work as very poor, on the one hand, he identified

3   plaintiff's prognosis for continued success with anger management as "good" and his anxiety

4   problem as "stable and in good control."  AR at 69.

5                    *5.       The ALJ Did Not Err in Evaluating Dr. Hill's Opinion*

6           As a threshold matter, the Court notes that plaintiff does not challenge the ALJ's

7   reasons, discussed above, for discounting Dr. Hill's opinions.  Rather, plaintiff contends that

8   the ALJ erred by failing to adopt Dr. Hill's opinion regarding plaintiff's difficulties resolving

9   interpersonal conflicts, as plaintiff believes these difficulties would also prevent plaintiff from

10  functioning successfully with co-workers and supervisors in a workplace setting.  The ALJ

11  concluded that plaintiff "can interact with co-workers and accept supervision, but should not

12  work with the public."  AR at 13.

13          The Court agrees with the Commissioner that the ALJ provided several specific and

14  legitimate reasons for discounting Dr. Hill's opinions, and these reasons are equally applicable

15  to Dr. Hill's opinion that plaintiff's difficulties resolving interpersonal conflicts would prevent

16  him from working.  Specifically, although the ALJ did not explicitly reject Dr. Hill's opinions

17  regarding plaintiff's problems with interpersonal conflicts, the ALJ accepted other physicians'

18  opinions that plaintiff's social functioning would not prevent him from working.  For example,

19  the ALJ adopted several other doctors' opinions that plaintiff was only "moderately limited in

20  his social functioning," and cited Dr. Schneider's opinion that plaintiff's "daily narcotic usage

21  contributed to his irritability and suicidal ideation."  AR at 60.  The ALJ also cited Dr. Press's

22  findings that plaintiff "has a few good friends which whom he talks on the telephone almost

23

24

1    every day and sees on the weekends," AR at 60, and that plaintiff could "accept instruction

2    from a supervisor in a work setting," AR at 68.[5]

3         Moreover, in the ALJ's lengthy discussion and resolution of the conflicting opinions of

4    Drs. Schneider and Hill, the ALJ consistently assigned more weight to Dr. Schneider's

5    opinions. AR at 67-69. As mentioned above, Dr. Schneider acknowledged plaintiff's

6    interpersonal difficulties, including his "moodiness, irritability, and aggressiveness" which

7    would "be a part of the attitude and presentation at work," but opined that these characteristics

8    would not interfere with his ability to interact and function in the workplace as these have been

9    "longstanding" and "virtually life-long" problems for plaintiff. AR at 308. Similarly, Dr.

10   Schneider opined that plaintiff's "psychiatric condition has reached maximum medical

11   improvement," and that "no further treatment is necessary for this longstanding disorder. It

12   can be counted on to wax and wane with each marital dispute, administrative disappointment,

13   and financial setback." AR at 308. The ALJ expressly discussed and adopted Dr. Schneider's

14   conclusion that plaintiff's depressive disorder "was not an obstacle to returning to work. He

15   also stated that his condition would wax and wane with each dispute and set back he

16   encounters in his life. Finally, Dr. Schneider stated that he concurred with Drs. Sullivan and

17   Delyanis that there were no factors preventing the claimant from returning to work." AR at 67

18   (citing AR at 308).

19         Thus, the Court cannot agree with plaintiff's argument that the ALJ's failure to

20   expressly discuss this aspect of Dr. Hill's opinion constitutes reversible error. The Court can

21   reasonably infer that the ALJ adopted the conflicting opinions of other doctors, including Dr.

22   Schneider and Dr. Press, that plaintiff's difficulty resolving interpersonal conflicts was not so

23         ───────────────

         [5] The ALJ did, however, assign "less weight" to Dr. Press' opinion to the extent it was

24   "inconsisten[t] with the other psychiatric and psychological source opinions concerning the
     claimant's global assessment of functioning." AR at 68.

REPORT AND RECOMMENDATION - 16

1    severe as to bar him from working.  The ALJ's interpretation of the evidence must be upheld if

2    it "is supported by inferences reasonably drawn from the record[.]"  *Batson v. Comm'r of Soc.*

3    *Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  *See also Magallanes v. Bowen*, 881 F.2d

4    747, 755 (9th Cir. 1989) (explaining that an ALJ need not recite "magic words," and that a

5    reviewing court may draw inferences relevant to the ALJ's analysis of the evidence "if those

6    inferences are there to be drawn.").

7          Finally, the Court is unpersuaded by plaintiff's argument that the ALJ's stated reasons

8    for discounting the other aspects of Dr. Hill's opinions are inapplicable to his opinion

9    regarding plaintiff's problems with interpersonal conflicts.  As discussed above, the ALJ

10   discounted Dr. Hill's opinions in part because he had accepted plaintiff's self-reports

11   "uncritically."  As the Commissioner points out, the majority of Dr. Hill's observations

12   regarding plaintiff's interpersonal difficulties were based entirely upon plaintiff's self-report.

13   AR at 579, 582, 591, 595, 597.  Similarly, although at the time that Dr. Hill discharged plaintiff

14   from treatment, he maintained that plaintiff had "[p]ersonality characteristics associated with

15   impatience and intolerance that aggravate temper and interfere with problem solving when

16   interpersonal conflicts arise," Dr. Hill also indicated that plaintiff was "currently stable and

17   demonstrating good capacities for self management of his anger and depression."  AR at 579.

18   In addition, Dr. Hill noted that plaintiff's anxiety and anger management had improved,

19   plaintiff "appears to have reached maximum psychological improvement with respect to self

20   managing his problems with chronic pain, depression, anxiety, explosive temper, stress, and

21   insomnia," and that his "psychological problems appear to be fixed and stable."  AR at 580.

22   Dr. Hill assigned plaintiff a GAF score of 58.  AR at 578.  Nevertheless, Dr. Hill maintained

23   that plaintiff's prognosis for returning to work was "very poor."  The ALJ discounted Dr.

24   Hill's opinions due to "the consistency" between his findings and his conclusion that plaintiff's

1    prognosis for returning to work was poor.  AR at 69.  This reason was equally applicable to Dr.

2    Hill's opinion regarding plaintiff's ability to resolve interpersonal conflict in the workplace.

3    AR at 69.

4            As noted in the outset of this opinion, the role of this Court is limited.  It is the ALJ

5    who is responsible for determining credibility, resolving conflicts in medical testimony, and

6    resolving any other ambiguities that might exist.  *Andrews,* 53 F.3d at 1039.  When the

7    evidence is susceptible to more than one rational interpretation, it is the Commissioner's

8    conclusion that must be upheld.  *Thomas,* 278 F.3d at 954.  While it may be, perhaps,

9    theoretically possible to construe the evidence as suggested by the plaintiff, it is not possible to

10   conclude that plaintiff's interpretation is the only rational one.  The ALJ did not err, and his

11   opinion is supported by substantial evidence in the record.

                            VIII.   CONCLUSION

13           For the foregoing reasons, the Court recommends that this case AFFIRMED, and this

14   matter be DISMISSED with prejudice.  A proposed order accompanies this Report and

15   Recommendation.

16           DATED this 14th day of January, 2013.

17

18   _____
     JAMES P. DONOHUE
19   United States Magistrate Judge

20

21

22

23

24

REPORT AND RECOMMENDATION - 18